IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| BARBARA FERRARA-FALTINEK, | |
| Plaintiff, | |
| v. | 2:23-CV-153-Z-BR |
| WEST TEXAS A&M UNIVERSITY, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant West Texas A&M University's ("WTAMU") Motion for Summary Judgment ("Motion"), filed January 24, 2025. ECF No. 40. Plaintiff Barbara Ferrara-Faltinek ("Ferrara") responded on February 21, 2025. ECF No. 48. WTAMU replied on March 8, 2025. ECF No. 54. The Motion is now ripe. Having reviewed the Motion, briefing, and relevant law, the Motion is **GRANTED**.

### BACKGROUND

This is an employment retaliation case brought by Barbara Ferrara-Faltinek, an officer with the WTAMU campus police department. ECF No. 41 at 5. Ferrara was hired in 2010 by Chief Shawn Burns as a patrol officer but, after scoring higher in a panel interview, was later promoted to Criminal Investigation Division Sergeant.[1] *Id.* at 7; ECF No. 48 at 7.

In the fall of 2021, multiple female officers filed complaints through the WTAMU Title IX Office against Aaron Price, a former WTAMU Patrol Sergeant. ECF Nos. 1 at 2, 41 at 10, 48 at 8. As part of the investigation, Ferrara was contacted as a potential witness. *Id.* Ferrara testified about what she had heard regarding the gender discrimination and harassment allegations against Price. *Id.* Additionally, Ferrara voiced personal complaints regarding her interactions with Chief Burns. ECF Nos. 1 at 2–3, 48 at 8.

---

[1] This position title was later re-classified as "Lieutenant" instead of "Sergeant." ECF No. 41 at 7.

After she participated in Price's Title IX investigation, Ferrara alleges that "Chief Burns proceeded to retaliate against everyone involved." ECF No. 48 at 9. Ferrara claims that WTAMU and Chief Burns's retaliatory behaviors "unreasonably interfered" with her work performance and harmed her reputation in the workplace and the greater law-enforcement community. ECF No. 48 at 16–20. One such instance is Ferrara's reassignment to Training and Compliance Lieutenant in February 2022. ECF Nos. 41 at 9, 48 at 10. Chief Burns's first choice for the position was Lieutenant Zach Nethery; however, Nethery conveyed to Burns that he would soon be voluntarily resigning. ECF No. 41-1 at 79. Thus, Burns chose Ferrara instead. As part of the reassignment, Ferrara's office space was moved to a different location in the department, which Ferrara claims was "isolated" and "done as punishment for [her] cooperation in the [Title IX] investigation." *Id.*; ECF No. 48 at 10. When Chief Burns returned her to the "main bullpen area," Ferrara told Burns that she would have preferred to stay where she was "as it is quiet over here and it makes it easier for [her] to hear and concentrate." ECF Nos. 41 at 9; 41-1 at 79.

Another example: Ferrara's application for the Assistant Chief Position in December 2022. ECF No. 41 at 11. After receiving a lower interview score from the interview panel, she was passed over in favor of then-Lieutenant Kyle Hawbaker. ECF Nos. 41 at 11–12, 48 at 12. That WTAMU chose a "clearly less qualified" employee, Ferrara claims, demonstrates the University's continued retaliation against her. *Id.*

Ferrara filed a complaint with the Office of Civil Rights ("OCR") of the Department of Education on June 20, 2022. ECF No. 48 at 11. OCR referred this complaint to the EEOC for investigation on October 13, 2022. *Id.* Ferrara then separately filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 6, 2023. Following this charge, the EEOC issued a right-to-sue letter on June 30, 2023. ECF Nos. 1 at 5, 41 at 6. Ferrara filed the instant lawsuit on September 20, 2023.

## LEGAL STANDARD

Summary judgment is appropriate if the movant shows there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The movant meets its initial burden by showing that the "evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). Facts are considered "material" only if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In determining whether a genuine issue as to any material fact exists, [courts] must view the evidence in the light most favorable to the nonmoving party." *Fahim v. Marriot Hotel Servs., Inc.*, 551 F.3d 344, 348–49 (5th Cir. 2008).

"[Y]et the nonmovant may not rely on mere allegations in the pleadings; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002) (citations omitted). Further, "Rule 56 does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992). Parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citations omitted). "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451 (citing FED. R. CIV. P. 56(c)).

ANALYSIS

**I. Ferrara has asserted a claim of retaliation.**

The Court must first ascertain which claims are properly asserted by Ferrara. WTAMU has moved for summary judgment on Ferrara's Title VII retaliation claim. This is the sole claim Ferrara asserted against WTAMU—claims for hostile work environment and gender discrimination have *not* been asserted. *See* ECF Nos. 48 at 5 (where Ferrara mentions her "hostile work environment claim"), 41 at 1 (where WTAMU moves for summary judgment on "all pending claims," listing "gender discrimination" and "retaliation"). This confusion among parties likely stems from Ferrara's briefing, which conflates the concept of "claims" with "supporting arguments."

Ferrara herself asserts she "has brought a *retaliation* claim on multiple grounds." ECF No. 48 at 5 (emphasis added). The *grounds* for bringing this claim include "a retaliatory hostile work environment, the wrongfully removing her from her career track, and the failure to promote her." *Id.* But grounds are not claims. Ferrara fails to recognize this distinction, arguing that "WTAMU failed to move for summary judgment on the retaliatory hostile work environment claim, so that claim should survive." *Id.* But retaliatory hostile work environment itself is not claim in the instant case; rather, it is an argument made in support of Ferrara's *retaliation* claim.

As this Court previously stated, "retaliation is separate from a hostile work environment claim under Title VII." ECF No. 27 at 2. No hostile work environment claim is raised here—only a retaliation claim, in which Ferrara alleges the creation of a hostile work environment as a form of retaliation. But even if Ferrara intended this to operate as a standalone claim, "retaliatory hostile work environment" is not a cause of action currently recognized by the Fifth Circuit. *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 741 n.5 (5th Cir. 2017) ("We have not recognized a retaliatory hostile

4

work environment cause of action."). Accordingly, retaliation is the only claim at issue in the instant Motion, and WTAMU properly moved for summary judgment on the same.

**II. Allegedly retaliatory acts occurring before May 10, 2022, are time-barred.**

Employees must adhere to certain filing requirements under Title VII. Specifically, "a plaintiff filing a complaint regarding an employment practice occurring in Texas has 300 days [after the alleged unlawful practice occurred] to file a charge with the EEOC under Title VII." *Tompkins v. Amarillo Coll.*, No. 2:19-CV-027, 2021 WL 4796916, at *4 (N.D. Tex. May 14, 2021) (quoting *Garcia v. City of Amarillo*, No. 2:18-CV-095, 2020 WL 4208060, at *3 (N.D. Tex. July 22, 2020)); 42 U.S.C. § 2000e-5(e)(1). Congress intended this 300-day deadline to operate as a statute of limitations. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394, 395 n.12 (1982) ("Congress intended the filing period to operate as a statute of limitations instead of a jurisdictional requirement."). Accordingly, recovery is precluded for any "discrete acts of discrimination or retaliation that occur outside the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).

Ferrara filed a complaint with OCR on June 20, 2022. Ferrara then filed a charge of discrimination with the EEOC on March 6, 2023. WTAMU argues that, based on this date of filing with the EEOC, any "claims based on conduct occurring earlier than May 10, 2022 (or 300 days before she filed her charge) would be untimely and should be dismissed as time-barred." ECF No. 41 at 14. By this logic, the Court would be prohibited from considering Ferrara's assignment to the Police Training and Compliance Lieutenant position and corresponding office move, as these events occurred in February 2022. *Id.* Ferrara disagrees, arguing "because there is a retaliatory hostile work environment claim," the Court may consider acts that occurred outside of the 300-day deadline pursuant to the continuing violation doctrine. ECF No. 48 at 25. This doctrine constitutes an exception to the traditional 300-day deadline: "as long as an employee files her complaint while at least one act which

comprises the hostile work environment claim is still timely, the entire time period of the hostile environment may be considered by a court for the purpose of determining liability." *Heath*, 850 F.3d at 736.

But Ferrara has not asserted a hostile work environment claim—only retaliation. The continuing violation doctrine "applies *only* in the context of hostile work environment claims." *Nicholson v. W.L. York, Inc.*, No. 23-20440, 2024 WL 913378, at *4 (5th Cir. Mar. 4, 2024) (per curiam) (emphasis added) (citing *Morgan*, 536 U.S. at 122). Ferrara's "retaliation claim[] [is] not subject to the continuing violation doctrine." *Tompkins*, 2021 WL 4796916, at *5. Thus, acts occurring outside of the 300-day deadline—including Ferrara's assignment to the Police Training and Compliance Lieutenant position and corresponding office move—are time barred and may not be considered by this Court.

Ferrara further claims that equitable tolling should apply, permitting the Court to consider Ferrara's assignment and office move, based on the complaint she filed with OCR. Ferrara contends that an OCR employee "misled [her] about the nature of her filing and her rights." ECF No. 48 at 27. Ferrara states that she relied on OCR's statement that "she would not need to do anything else," until she contacted EEOC and "learned that she should file an additional charge." *Id.* This, Ferrara argues, shows that she "exercised due diligence in attempting to file with the correct government agency within the 300-day window," justifying an application of equitable tolling. *Id.* at 28.

The Court is unpersuaded. The Fifth Circuit has identified three possible bases for equitable tolling in the context of a Title VII action: "(1) the pendency of a suit between the same parties in the wrong forum; (2) plaintiff's unawareness of the facts giving rise to the claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about the nature of her rights." *Hull v. Emerson Motors/Nidec*, 532 F. App'x 586, 588 (5th Cir. 2013). The Fifth Circuit has also applied equitable tolling "in rare

and exceptional circumstances when a plaintiff is actively misled by the *defendant* about the cause of action or is prevented in some extraordinary way from asserting his rights." *Stone v. La. Dep't of Rev.*, 590 F. App'x 332, 337 n.2 (5th Cir. 2014) (emphasis added).

None of these bases apply to Ferrara's situation. The summary-judgment evidence does not establish that (1) Ferrara and WTAMU were litigating the action in state court, only to later discover that the state court was the improper forum; that (2) WTAMU intentionally concealed facts giving rise to Ferrara's claim; or that (3) EEOC misled Ferrara about the nature of her rights. Further, WTAMU did not mislead Ferrara. And although the Fifth Circuit has described these bases as "possible" reasons to apply equitable tolling, "leaving the door open for recognition of other cognizable bases," a plaintiff's "lack of due diligence in pursuing his or her rights" does not excuse an untimely filing. *Roe v. United States*, 839 F. App'x 836, 843 (5th Cir. 2020). Here, Ferrara intentionally filed a Title IX complaint rather than a Title VII complaint, admitting that she "thought [her] complaint would be governed by Title IX and handled by OCR." ECF No. 49 at 3. Despite this misunderstanding, "[e]mployees are charged with knowing the law," and ignorance of the law "cannot justify tolling." *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002). Equitable tolling is to be applied "sparingly," and the Court declines to apply it here. *Morgan*, 536 U.S. at 113.

**III. Ferrara's retaliation claim does not raise a genuine issue of material fact.**

The Court turns to the merits of Ferrara's retaliation claim, considering only those allegedly retaliatory acts occurring within the limitations period. Title VII retaliation claims proceed under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 469 (5th Cir. 2021). Under this framework, the initial burden rests with Ferrara to establish that she (1) "participated in an activity protected by Title VII"; that (2) her "employer took an adverse employment action" against her; and that (3) "a causal connection exists between the

7

protected activity and the adverse employment action." *Leal v. McHugh*, 731 F.3d 405, 416–17 (5th Cir. 2013). If Ferrara establishes a prima facie case, the burden shifts to WTAMU to show a legitimate, nonretaliatory reason for its decision. *Katz v. Wormuth*, No. 22-30756, 2023 WL 7001391, at *7 (5th Cir. Oct. 24, 2023). Upon this showing, the ultimate burden rests on Ferrara to show that WTAMU's reason is pretext for retaliation. *Id.*

### A. Protected Activity

Ferrara provided minimal briefing on the first element: whether she has participated in an activity protected by Title VII. Ferrara contends that after participating in a 2021 Title IX investigation regarding complaints of sex discrimination made against former WTAMU Patrol Sergeant Aaron Price, Chief Burns "proceeded to retaliate" against her and "everyone involved in the investigation." ECF No. 48 at 8–9. Ferrara alleges that she "was contacted by the Title IX investigators as a potential witness in the case," and states that she provided "truthful information about what she had heard." *Id.* at 8. Although the investigation focused on Sergeant Price, Ferrara "also disclosed some of what she had been subjected to by Chief Burns," which she believed was facilitated by Sergeant Price. *Id.* Ferrara believes that her "statements to the investigators were protected activity for purposes of Title VII." *Id.* at 9.

Ferrara is correct. An employee has engaged in protected activity if she has either (1) "opposed any practice made an unlawful employment practice" by Title VII; or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a); *see also Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003). Of these two forms of protected activity—opposition and participation—Ferrara's statements to investigators during Sergeant Price's Title IX investigation fit most neatly into the "opposition" category. *Stingley v. Watson Quality Ford*, 836 F. App'x 286, 289 (5th Cir. 2020) ("Title VII outlines two forms of protected activity: opposition and participation."). This is because Ferrara, by participating in Sergeant Price's

8

Title IX investigation, opposed an employment practice deemed unlawful under Title VII: sex discrimination. 42 U.S.C. § 2000e-2(a)(1) (stating that it is unlawful employment practice for an employer to "discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin"); *see* ECF Nos. 41 at 10, 48 at 8–9 (describing Price's Title IX investigation featuring "complaints from multiple women against Sgt. Price for sex discrimination"). Although Ferrara participated in an investigation, it was an investigation under Title IX—*not* an investigation "under Title VII" as statutorily required.

Information disclosed by Ferrara to Title IX investigators—including comments about Sergeant Price, as well as any informal complaints about Chief Burns—constitutes opposition to sex discrimination and thus protected activity for purposes of Title VII. *See Shahrashoob v. Tex. A&M Univ.*, No. 22-699, 2023 WL 8238192, at *5 (S.D. Tex. Nov. 28, 2023) ("An informal complaint may constitute protected activity for purposes of retaliation claims."). Ferrara has satisfied the first element of her retaliation claim.

### B. Adverse Employment Action

The Court turns to the second element of Ferrara's retaliation claim: whether WTAMU "took an adverse employment action" against her. *Leal*, 731 F.3d at 416–17. "For an employer's act to qualify as a materially adverse action, 'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Cabral v. Brennan*, 853 F.3d 763, 767 (5th Cir. 2017) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). In determining whether an allegedly retaliatory action is "materially adverse," courts often "look to indicia such as whether the action affected job title, grade, hours, salary, or benefits or cause a diminution in prestige or change in standing among coworkers." *Katz*, 2023 WL 7001391, at *7.

9

Ferrara alleges three main retaliatory acts occurring within the 300-day limitations period. *See* ECF Nos. 48 at 11–12, 16, 21, 41-1 at 42–43 (Ferrara's EEOC Charge of Discrimination, listing the threat of termination and failure to promote as the "personal harm" suffered). First, Ferrara alleges that WTAMU "engaged in several retaliatory acts that, when combined, unreasonably interfered with Ferrara's work performance." ECF No. 48 at 16. Ferrara provides three[2] arguments to support her belief that WTAMU cultivated a retaliatory hostile work environment: (1) retaliation by "isolating and ostracizing" Ferrara in various ways, such as Chief Burns failing to include Ferrara in meetings and other colleagues failing to acknowledge her unless required; (2) Chief Burns "ruining [her] reputation" in the law-enforcement community; and (3) Chief Burns issuing "ongoing threats" of retaliation "against people who complained" in Sergeant Price's Title IX investigation. *Id.* at 16–20.

Second, Ferrara states that she met with Chief Burns and the Assistant Chief on September 6, 2022. *Id.* at 11. During that meeting, Chief Burns allegedly "blamed Ferrara for anonymous complaints that had been made against him" and "said that if he found out it was Ferrara filing the complaints, she would be fired." *Id.* Ferrara claims she "asked him to clarify that he was telling her if she filed a complaint she would be fired, and Chief Burns said 'yes.'" *Id.*

Third, Ferrara alleges she "was passed over for a promotion in favor of [then-Lieutenant Kyle Hawbaker] who was clearly less qualified, given his disciplinary history and the fact that he had omitted disciplinary history in a job application." *Id.* at 12. Ferrara argues that "Burns ensured that Ferrara would not receive the promotion because

---

[2] In support of her retaliatory hostile work environment argument, Ferrara also discusses her assignment to the Police Training and Compliance Lieutenant position and corresponding office move. As previously discussed, consideration of this argument—as well as any other allegedly retaliatory acts occurring prior to May 10, 2022—is time-barred. *See supra* Part II.

10

he personally sat on the hiring committee, along with Byrd and Dr. Hueston," and "he knew she complained of sex discrimination and retaliation against him." *Id.* at 21.

* * *

The relevant question before the Court: do any of the three allegedly retaliatory actions qualify as "materially adverse?"

### i. Retaliatory Hostile Work Environment

First are Ferrara's various allegations supporting her retaliatory hostile work environment argument. The Court begins with Ferrara's allegations of "isolation and ostracization." *Id.* at 16–18. The alleged lack of acknowledgement from colleagues and negative treatment of Ferrara—though distasteful—"fall[s] into the category of petty slights, minor annoyances, and simple lack of good manners that employees regularly encounter in the workplace, and which the Supreme Court has recognized are not actionable retaliatory conduct." *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 478, 485 (5th Cir. 2008) (finding that employers' angry looks and negative discussions about an employee did not constitute materially adverse action). Title VII "does not set forth a general civility code for the American workplace." *Burlington*, 548 U.S. at 68.

However, Ferrara also alleges that was "prevented from attending staff meetings," "excluded from departmental meetings that involved departmental changes affecting her role," and excluded from emails "about things directly related" to her division. ECF Nos. 48 at 16, 49 at 542. Though Ferrara's briefing on this issue is scarce, such exclusion may have resulted in material consequences regarding Ferrara's job duties. Thus, Ferrara's exclusion from meetings or other job duty-related communications likely amounts to materially adverse action. *See Lee v. City of Corpus Christi*, 749 F. Supp. 2d 521, 542 (S.D. Tex. 2010) (noting

that plaintiff's exclusion from meetings, causing her "to be unable to obtain information she needed to do her job," may constitute materially adverse action).

Next is Ferrara's allegation of WTAMU damaging her reputation in the professional community. ECF No. 48 at 18–19. Ferrara claims that Chief Burns's alleged retaliation "negatively impact[ed] her relationships" within her workplace and the broader law-enforcement community. *Id.* For example, Ferrara claims that "at one time, [she] had a positive relationship with Dr. Hueston," WTAMU's former department head for criminal justice, but "Dr. Hueston no longer speaks" to her. *Id.* at 19. Ferrara also states that she "used to be able to call colleagues who worked with the Randall County District Attorney's Office, but they will no longer engage with [her] outside of a specific work-related request." ECF No. 49 at 8. But "public humiliation or loss of reputation . . . are not adverse actions." *Sabzevari v. Reliable Life Ins. Co.*, No. 03-3240, 2006 WL 2336909, at *3 (S.D. Tex. Aug. 10, 2006), *aff'd*, 264 F. App'x 392 (5th Cir. 2008); *Stewart v. Evans*, 275 F.3d 1126, 1136 (D.C. Cir. 2002).

Finally, the Court addresses Ferrara's allegations of Chief Burns's retaliation by "ongoing threats." ECF No. 48 at 19. All allegations here are either time-barred and cannot be considered or will be duplicative of the Court's consideration of comments made by Chief Burns. *Id.* (discussing conduct occurring prior to May 10, 2022); *see infra* Part C(iii). Accordingly, they will not be discussed in greater detail here.

*ii. Failure to Promote*

WTAMU's decision to promote Kyle Hawbaker to Assistant Chief over Ferrara likely constitutes materially adverse action. The Fifth Circuit has held that "[f]ailure to promote is clearly an adverse employment action." *Haire v. Bd. of Sup'rs of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 364 (5th Cir. 2013); *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) ("Adverse employment actions are discharges, demotions, refusals to hire,

12

refusals to promote, and reprimands."). Thus, WTAMU's choice to promote Hawbaker instead of Ferrara constitutes materially adverse action.

### iii. Alleged Threats of Retaliation

Chief Burns's statements to Ferrara do not qualify as materially adverse. Although Ferrara's briefing claims that Chief Burns made an explicit threat of termination against her, Ferrara's deposition transcript reveals that Burns's threat "was implied." ECF No. 49 at 30 (WTAMU asking Ferrara that "Burns did not say he was going to terminate you in this [September 2022] conversation, correct," to which Ferrara responded that "[i]t was implied."); *see also* ECF No. 48 at 11 (Ferrara describing how Chief Burns's comments to *other* employees "got back" to Ferrara). In fact, Chief Burns stated that "[i]f I was blaming you, I would have fired you . . . . If I thought you were the root of all evil, I would have found a way to get rid of you." *Id.* But, as related to her participation in Price's Title IX investigation, Ferrara does not allege that Chief Burns blamed her and Ferrara was never fired. When asked if Chief Burns told Ferrara "that if she [was] upset [she should] file a formal complaint and let it be investigated," Ferrara agreed that "he may have said that at some point in the conversation." ECF No. 49 at 30, 379 (Burns stating that he "actually told her the same day if she had a complaint, to file it and let it be investigated"). Such statements would not dissuade a reasonable worker from making or supporting a charge of discrimination and did not affect Ferrara's "job title, grade, hours, salary, or benefits or cause a diminution in prestige or change in standing among coworkers." *Katz*, 2023 WL 7001391, at *7.

And the Fifth Circuit has held on several occasions that "criticism, such as [a supervisor's] oral threats or abusive remarks, does not rise to the level of an adverse employment action." *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 470 (5th Cir. 2021); *Breaux*, 205 F.3d at 158. So too here. The "materially adverse" inquiry is objective and "does not turn on a plaintiff's personal feelings about those circumstances." *Burlington*, 548 U.S.

13

at 68. Certainly, "an employee's subjective belief of discrimination, however genuine, cannot be the basis of judicial relief." *EEOC v. La. Off. of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995). That Ferrara interpreted Chief Burns's comments to constitute an implied threat does not rise to the level of a materially adverse action.

### C. Causal Connection

Finally, the Court turns to the third element of Ferrara's retaliation claim: whether "a causal connection exists between the protected activity and the adverse employment action." *Leal*, 731 F.3d at 416–17. To demonstrate this third element, "a plaintiff must demonstrate that the employer's decision was based in part on knowledge of the employee's protected activity." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020). A causal connection can "be established simply by showing close enough timing between two events." *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 241 (5th Cir. 2019).

#### i. Retaliatory Hostile Work Environment

Ferrara fails to establish a causal connection between the protected activity of participating in a Title IX suit and WTAMU's alleged adverse employment actions— (1) isolation and ostracization; (2) reputational harm; and (3) ongoing threats of retaliation. The Court considers each allegation in turn.

First is Ferrara's allegation that she was "prevented from attending staff meetings," "excluded from departmental meetings that involved departmental changes affecting her role," and excluded from emails "about things directly related" to her division. ECF Nos. 48 at 16, 49 at 542. Thus, Ferrara now bears the burden to demonstrate that WTAMU's exclusion "was based in part on knowledge of [Ferrara's] protected activity." *Lyons*, 964 F.3d at 305. Ferrara has not met this burden—she has not demonstrated that WTAMU's exclusion of Ferrara from meetings was based at all on knowledge of her protected activity. Although Ferrara discusses her alleged exclusion, she fails to identify any summary-judgment evidence

14

showing that this behavior occurred *because of* her participation in Price's Title IX investigation. *See Aguillard v. La. Coll.*, 824 F. App'x 248, 251 (5th Cir. 2020) (affirming the district court's grant of summary judgment in part based on plaintiff's inadequate summary-judgment evidence regarding a causal connection). Even if this were not enough, causal connection via temporal proximity also fails—WTAMU's exclusive behavior occurred around nine to twelve months after Ferrara's protected activity. ECF No. 49 at 542, 550; *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (citing cases where three or four months between the protected activity and adverse employment action was insufficient to establish a causal connection). Ferrara has failed to show a causal connection on this issue sufficient to defeat summary judgment. *See Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1266 (5th Cir. 1991) (finding summary judgment appropriate where the nonmoving party "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation").

Ferrara's second and third allegations similarly fail. As previously discussed, Ferrara's alleged reputational harm does not rise to the level of a materially adverse employment action. *See supra* Part B(i). But, even if it did, Ferrara fails to establish a sufficient causal connection. Like her allegations of exclusion, Ferrara produces no particular summary-judgment evidence tying her alleged "isolation and ostracization" by colleagues and reputational harm to her participation in Price's Title IX investigation. Once again, "conclusory allegations, improbable inferences, and unsupported speculation" are insufficient summary-judgment evidence. *Int'l Shortstop, Inc.*, 939 F.2d at 1266; *see also Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007) ("[W]e must draw all reasonable inferences in the light most favorable to the nonmovant. That does not mean, however that we ought to draw unreasonable inferences or credit bald assertions . . . .").

As discussed above, Ferrara's allegations of Chief Burns's retaliation by "ongoing threats" are time-barred from consideration or would be duplicative of considerations already made by the Court. *See infra* Part C(iii). Even if these allegations were found to constitute materially adverse employment action—and they do not—Ferrara has failed to show a causal connection on these issues sufficient to defeat summary judgment.

### ii. Failure to Promote

Ferrara fails to establish a causal connection between the protected activity of participating in a Title IX suit and the adverse employment action—WTAMU's decision to promote Kyle Hawbaker to Assistant Chief over Ferrara. Next, the Court must assess whether WTAMU provided a legitimate, non-discriminatory justification for failing to promote Ferrara. Ferrara alleges that she "was the clearly more qualified candidate," yet a comparison of Ferrara and Hawbaker's interview scores and representative experience paint a different picture.

Despite Ferrara's contention that she has "more diversity in background, more diversity in training, and . . . more experience in supervisory position[s]," the interview scoring sheet indicates that Hawbaker (1) worked at WTAMU for 7 more years than Ferrara; (2) possessed five to six years more of supervisory experience than Ferrara; (3) had an additional year of total police experience over Ferrara; and (4) received an average interview panel score of 3.35, compared to Ferrara's 2.54. ECF Nos. 41 at 11, 41-1 at 62, 49 at 20. This shows that the interview panel—consisting of Chief Burns, then-Assistant Chief Byrd, and Dr. Harry Hueston—scored Hawbaker as the higher-qualified individual for the job. Additionally, Dr. Hueston had no knowledge of Ferrara's protected activity at the time of the interviews and "believed that Lt. Hawbaker was the more qualified candidate." *See* ECF No. 41-1 at 77 (Hueston Declaration).

The objective interview scores, coupled with Dr. Hueston's Declaration, indicate that the best-qualified individual was chosen. "[C]hoosing some other candidate because he is the best-qualified individual for the job is generally a legitimate, nondiscriminatory reason for an adverse employment decision." *Patrick v. Ridge*, 394 F.3d 311, 318 (5th Cir. 2004); *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 721 n.2 (5th Cir. 2002). Ferrara has not presented evidence from which a jury could conclude that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over [Ferrara] for the job in question." *Moss v. BMC Software, Inc.*, 610 F.3d 917 (5th Cir. 2010) (quoting *Deines v. Tex. Dep't of Protective & Regul. Servs.*, 164 F.3d 277, 280–81 (5th Cir. 1999)). Accordingly, WTAMU has satisfied its burden of showing a nondiscriminatory reason for its decision to promote Hawbaker over Ferrara, precluding a finding that WTAMU was motivated by "retaliatory animus." *Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 758 (5th Cir. 2017).

The burden now shifts back to Ferrara "to raise an issue of material fact showing that [WTAMU's] offered reason is in fact pretext for the real retaliatory purpose." *Hernandez v. Metro. Transit Auth. of Harris Cnty.*, 673 F. App'x 414, 420 (5th Cir. 2016); *McDonnell Douglas*, 411 U.S. at 802–05. Ferrara must demonstrate that her nonpromotion "would not have occurred but for [WTAMU's] retaliatory motive." *Outley v. Luke & Assocs.*, 840 F.3d 212, 219 (5th Cir. 2016). Here, Ferrara failed to raise any issue of material fact. Any attempt by Ferrara to demonstrate pretext by arguing that she was "clearly more qualified" fails under Fifth Circuit precedent—to be sure, Ferrara's qualifications do not "leap from the record and cry out to all who would listen that [she] was vastly—or even clearly—more qualified for the subject job than was [Hawbaker]." *Price*, 283 F.3d at 743. At the core, Hawbaker received higher average interview scores than Ferrara; Ferrara's subjective belief that the choice to promote Hawbaker was retaliatory "is insufficient to create an inference of pretext." *Goring v. Bd. of Sup'rs of La. State Univ. Agr. & Mech. Coll.*, 414 F. App'x 630, 632 (5th Cir. 2011).

As the differences in Ferrara's and Hawbaker's qualifications are not "so widely disparate that no reasonable employer would have made the same decision," Ferrara has not established pretext through her qualifications. *Murchison v. Cleco Corp.*, 544 F. App'x 556, 560 (5th Cir. 2013).

Finally, the failure to promote is temporally remote from the alleged protected activity—around 16 months—underscoring the thinness of any causal link. *See Hernandez*, 673 F. App'x at 420 n.7 (describing how a period of twelve months between an employee engaging in protected activity and submitting applications for promotion was "insufficient to support an inference of causality"). In sum, Ferrara has failed to show a causal connection between the failure to promote and her involvement in Price's Title IX investigation sufficient to defeat summary judgment.

### iii. Alleged Threats of Retaliation

Ferrara fails to establish a causal connection between the protected activity of participating in a Title IX suit and the alleged adverse employment action—Chief Burns's comments to Ferrara, which she interpreted as an implied threat. As previously discussed, the Court does not discern that Chief Burns's comments rise to the level of a materially adverse action. But, even if they did, Ferrara has not shown the existence of a causal connection. Chief Burns's comments in September 2022 occurred approximately one year after Ferrara's participation in Sergeant Price's Title IX investigation and three months after Ferrara filed her initial complaint with the Office of Civil Rights with the Department of Education. ECF No. 48 at 11 (complaint filed on June 20, 2022). The Court finds that this amount of time is not so close that it must "accept mere temporal proximity . . . as sufficient evidence of causality." *Clark Cnty. Sch. Dist.*, 532 U.S. at 273–74 (citing cases where three or four months between the protected activity and adverse employment action was insufficient to establish a causal connection); *Tompkins*, 2021 WL 4796916, at *18.

Additionally, Ferrara's subjective belief that Chief Burns's implied comments constitute retaliation "is insufficient to demonstrate a causal link between [her] protected activity and the adverse employment action." *Jones v. CVS Pharmacy, Inc.*, No. 3:07-CV-1383, 2009 WL 1904842, at *5 (N.D. Tex. July 2, 2009); *see, e.g., Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000) (holding that discrimination cannot be shown simply by plaintiff's "own subjective belief that [defendant] discriminated against [her]"). Though Chief Burns's behavior may be condemnable, it lacks causality. Ferrara's retaliation claim regarding Chief Burns's comments fails for lack of an adverse employment action, as well as lack of a causal connection.

### CONCLUSION

Because WTAMU has demonstrated that it is entitled to judgment as a matter of law as to all of Ferrara's claims, WTAMU's Motion for Summary Judgment is **GRANTED**.

**SO ORDERED**.

June 13, 2025

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE